CITY OF NORWALK, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Norwalk *v.* Pub. Util. Comm. (1982), 1 Ohio St. 3d 107.]

(No. 81-1690—Decided July 28, 1982.)

*Mr. Reese M. Wineman,* city law director, for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Donn D. Rosenblum,* for appellee Public Utilities Commission of Ohio.

*Messrs. Bricker & Eckler, Ms. Sally W. Bloomfield* and *Mr. David K. Conrad,* for intervening appellee village of Monroeville.

*Mr. Andrew T. Jones,* for intervening appellee General Telephone Company of Ohio.

*Per Curiam.* This court has perviously stated that " '[e]xtended-area telephone service' * * * is that type of service in which a subscriber of one telephone exchange may call a subscriber of another exchange without being required to pay a separate charge therefor." *Ohio Central Telephone Co.* v. *Pub. Util. Comm.* (1957), 166 Ohio St. 180 [1 O.O.2d 564], paragraph one of

the syllabus. Further, pursuant to R.C. 4905.22, 4905.26, and 4905.381, the commission is authorized "to order telephone companies under its jurisdiction to establish Extended Area Service * * *." *Arcadia Tel. Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 180, 182 [12 O.O.3d 182, 183].

R.C. 4901.13 authorizes the commission to adopt rules governing the management of its proceedings. See, *e.g., Toledo Coalition for Safe Energy* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d 559 [22 O.O.3d 474]; *Consumers' Counsel* v. *Pub. Util. Comm.* (1978), 56 Ohio St. 2d 220 [10 O.O.3d 376]. Pursuant to this statutory authority, the commission has promulgated rules to aid in its inquiry regarding EAS proceedings. Ohio Adm. Code 4901:1-7-01 *et seq.*

The sole issue raised in this appeal is whether a canvass of Norwalk subscribers must be taken for purposes of determining their willingness to pay increased rates traditionally associated with EAS pursuant to Ohio Adm. Code 4901:1-7-04.[1] This section, entitled "General considerations" sets forth numerous factors to be considered by the commission in EAS proceedings. One factor, contained in Rule 4901:1-7-04(B)(2), provides:

"Willingness of a substantial majority of the subscribers to pay appropriate rates is a basic and necessary condition to the institution of 'extended area service.' The demands of a few subscribers should not force the institution of a more costly telephone service contrary to the wishes of a majority of the subscribers."

Appellant focuses upon the language "[w]illingness of a substantial majority of the subscribers to pay appropriate rates," and contends that the commission was required to conduct a canvass of Norwalk subscribers in order to ascertain their willingness to pay increased rates.

Appellees argue that, as a general rule, EAS proceedings are initiated by subscribers situated in smaller exchanges since those subscribers presumably enjoy less adequate service than subscribers in larger exchanges because they

---

[1] Ohio Code 4901:1-7-04 provides:

" 'Extended area service' is not a substitute for message toll telephone service but rather a service designed to meet the day-by-day calling requirements of subscribers which cannot properly be met with local calling confined to a single exchange area. While it is recognized that the factors which determine whether 'extended area service' should be provided in a given situation are difficult of determination, even more difficult to evaluate, and are not includable in a mathematical formula, it is believed that they should be set forth generally as guides.

"When confronted with a situation suggesting a possible 'extended area service' requirement a telephone utility shall consider, but not limit itself to, all of the following factors:

"(A) Community of interest factors:

"(1) The volume of message toll telephone traffic between the exchanges involved, i.e., the calling rate.

"(2) The distribution of the calling to determine whether the traffic is originated by the subscribers generally or by only a relatively few subscribers.

"(Note: With reference to (1) and (2) above, when the main stations of the smaller of the two exchanges involved number more than 40% of the total of the main stations in both exchanges, the calling rate and distribution of the calling in each exchange shall be determined; otherwise the calling rate and distribution of the calling in the smaller exchange only shall be determined.)

are unable to reach as many stations without paying long distance tolls. Therefore, according to appellees, a canvass of the larger exchange will not, in most instances, reflect a need for EAS because there are more subscribers in the larger exchange who do not place calls to the smaller exchange, than there are in the smaller exchange who do not place calls to the larger exchange.

Accordingly, appellees contend that Rule 4901:1-7-04(B)(2) applies exclusively to the Monroeville subscribers, thereby preventing a limited number of those subscribers from imposing EAS upon the entire community.

This court has recognized that "* * * the character of an EAS proceeding is essentially that of an inadequate service case." *Arcadia Tel. Co.,* *supra,* at page 186. Thus, pursuant to R.C. 4905.22, it is incumbent upon the commission to determine whether the petitioning exchange is receiving adequate service. Implicit within appellant's argument is the assertion that if a canvass of Norwalk subscribers is conducted and a majority of its subscribers indicate they are unwilling to pay increased rates, then EAS should not be implemented. Simply stated, acceptance of appellant's construction of Rule 4901:1-7-04(B)(2) would vest a veto power within larger exchanges and, concomitantly, virtually extinguish the concept of EAS.

After a careful review of the language contained in R.C. 4905.26, 4905.22, 4905.381, and Rule 4901:1-7-04(B)(2), we are unable to perceive the grant of such a veto power to a non-petitioning exchange by either the General Assembly or the commission. Therefore, we reject appellant's contention as

---

"(3) The location of various services, products and activities, a partial list of which is set forth below.

"(a) Population movement.

"(b) School activities.

"(c) Police and fire service.

"(d) Other governmental services.

"(e) Medical, dental and veterinarian service.

"(f) Churches.

"(g) Agricultural organizations.

"(h) Shopping and service centers.

"(i) Employment centers.

"(j) Social interest.

"(B) Other pertinent factors:

"(1) Investment and cost considerations are of importance. It would not be in the public interest for a telephone utility to enter into exceptionally heavy investments in facilities and incur exceptionally high costs in situations where the 'extended area service' requirement was slight. Therefore, each of the factors must be evaluated in relation to all other factors. Timing is an important cost consideration and substantial weight must be given to plans for instituting the service in the most economical manner and at the most economical time.

"(2) Willingness of a substantial majority of the subscribers to pay appropriate rates is a basic and necessary condition to the institution of 'extended area service.' The demands of a few subscribers should not force the institution of a more costly telephone service contrary to the wishes of a majority of the subscribers."

both unfounded and unsupportable. Moreover, it is clear that the commission never intended such a result in view of the comprehensive list of community of interest factors to be considered in EAS proceedings. Ohio Adm. Code 4901:1-7-04(A)(1)-(3). Accordingly, we agree with the commission's decision limiting the application of Rule 4901:1-7-04(B)(2) to the smaller, petitioning exchange.

For the foregoing reasons, we conclude that the order of the Public Utilities Commission is reasonable and lawful and, accordingly, it is hereby affirmed.

*Order affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.